1  Robert S. Green (State Bar No. 136183)
   **GREEN & JIGARJIAN LLP**
2  235 Pine Street, 15th Floor
   San Francisco, CA 94104
3  Telephone: (415) 477-6700
   Facsimile: (415) 477-6710
4
5  Marc A. Topaz
   Richard A. Maniskas
   Tamara Skvirky
6  **SCHIFFRIN & BARROWAY, LLP**
   Three Bala Plaza East
7  Suite 400
   Bala Cynwyd, PA 19004
8  Telephone: (610) 667-7706

9  Attorneys for Plaintiff

10                    UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12  ─────────────────────────────────
    NORMAN RHODES, Individually and On Behalf  )  CIVIL ACTION NO.
13  of All Others Similarly Situated,          )
                                               )  C 04 3735 JSW
14                     Plaintiff,              )
                                               )  **CLASS ACTION COMPLAINT**
15               vs.                           )
                                               )
16  NEKTAR THERAPEUTICS, AJIT GILL,            )
    J. MILTON HARRIS, AND ROBERT B. CHESS,     )  **JURY TRIAL DEMANDED**
17                                             )
                       Defendants.             )
18                                             )
    ─────────────────────────────────
19

20         Plaintiff, Norman Rhodes ("Plaintiff"), individually and on behalf of all other persons
21  similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the
22  following based upon personal knowledge as to himself and his own acts, and information and belief
23  as to all other matters, based upon, *inter alia*, the investigation conducted by and through his
24  attorneys, which included, among other things, a review of the defendants' public documents,
25  conference calls and announcements made by defendants, United States Securities and Exchange
26  Commission ("SEC") filings, wire and press releases published by and regarding Nektar
27  Therapeutics, Inc. ("Nektar" or the "Company") securities analysts' reports and advisories about the
28  Company, and information readily obtainable on the Internet. Plaintiff believes that substantial

CLASS ACTION COMPLAINT                                                                             1

evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal class action on behalf of purchasers of the securities of NEKTAR between March 4, 2004 through August 4, 2004 inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District. Additionally, the Company maintains a principal executive office in this Judicial District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, Norman Rhodes, as set forth in the accompanying certification, incorporated by reference herein, purchased Nektar securities at artificially inflated prices during the Class Period and has been damaged thereby.

7. Defendant Nektar is a Delaware Corporation with its principal executive offices located 150 Industrial Road, San Carlos, California 94070.

CLASS ACTION COMPLAINT   2

8.  Defendant Ajit Gill ("Gill") is the Company's President, Chief Executive Officer and Director.

9.  Defendant J. Milton Harris ("Harris") is the Company's General Manager, Nektar Molecule Engineering.

10. Defendant Robert B. Chess ("Chess") is the Company's Chairman.

11. Defendants Gill, Harris, and Chess are collectively referred to hereinafter as the "Individual Defendants." During the Class Period, each of the Individual Defendants, as senior executive officers and/or directors of Nektar were privy to non-public information concerning its business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

12. Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

13. It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Nektar, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its

CLASS ACTION COMPLAINT                                                                 3

business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

14. As officers and controlling persons of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

15. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Nektar, each of the Individual Defendants had access to the adverse undisclosed information about Nektar financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Nektar and its business issued or adopted by the Company materially false and misleading.

16. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be

CLASS ACTION COMPLAINT 4

1  misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent
2  their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is
3  responsible for the accuracy of the public reports and releases detailed herein and is therefore
4  primarily liable for the representations contained therein.

17. Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Nektar securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Nektar business, operations, management and the intrinsic value of Nektar securities; and (ii) caused Plaintiff and other members of the Class to purchase Nektar securities at artificially inflated prices.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of Nektar between March 4, 2004 and August 4, 2004, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

19. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Nektar's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Nektar or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

20. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

21. Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

22. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Nektar; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

23. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

24. Nektar is a drug delivery products based company that provides a portfolio of technologies that will enable it and its pharmaceutical partners to improve drug performance throughout the drug development process. The Company is focused on three main technologies: Nektar Advanced PEGylation Technology, Nektar Pulmonary Technology and Nektar Supercritical Fluids Technology. These technologies are designed to improve either the performance of a drug molecule (such as improving bioavailability, safety, efficacy, stability or targeting) or how the drug is delivered (such as enabling a new dosage form or delivery profile that improves how the therapeutic can treat patients).

## Materially False And Misleading
## Statements Issued During The Class Period

25.     The Class Period commences on March 4, 2004. At that time, Nektar reported that Pfizer Inc. and Aventis announced that the European Medicines Evaluation Agency ("EMEA") had accepted the filing of a marketing authorization application for Exubera® (inhaled human insulin powder). The filing was submitted by Pfizer and Aventis and the acceptance of the filing was reported by them.

26.     In an article published by *Bloomberg*, Christopher J. Searcy, the Company's Vice President, Corporate Development, stated, with respect to the EMEA filing, the following: "Filing in our [Nektar's] mind signifies very explicitly that Pfizer believes the product is safe and effective."

27.     On March 8, 2004, Nektar announced that it had agreed to sell 9,500,000 shares of its common stock in an underwritten public offering. Nektar was offering all of the shares under its currently effective shelf registration statement. Lehman Brothers Inc. was the sole underwriter for this offering. Nektar had granted Lehman Brothers an option to purchase up to an additional 1,425,000 shares of common stock. Upon completion of the offering, the Company received $199.5 million in proceeds.

28.     On May 5, 2004, Nektar announced its financial results for the first quarter ended March 31, 2004. The Company reported revenues of $25.8 million for the three months ended March 31, 2004, compared to $25.5 million for the first quarter of 2003. In the first quarter of 2004, product revenues were $4.3 million compared to $7.1 million in 2003, and contract research revenues totaled $21.5 million compared to $18.4 million in 2003. With respect to Exubera, defendant Gill stated:

> So far, 2004 has been a year of significant progress[.]...We have seen positive developments on three late stage programs. Exubera® (inhaled insulin) achieved a key milestone through the filing by Pfizer and Aventis of a marketing authorization application in the E.U.

29.     Additionally and with respect to the progress of Exubera, the Company, in its press release, stated:

> On March 4, 2004 Nektar reported that Pfizer and Aventis announced that the European Medicines Evaluation Agency (EMEA) has accepted the filing of a marketing authorization application for Exubera. Nektar developed and provides the

CLASS ACTION COMPLAINT                                                                                     7

inhalers and the powdered insulin for the Exubera product. Pfizer and Aventis are seeking approval to market Exubera for adult patients with type 1 and type 2 diabetes.

30. On August 2, 2004, Nektar announced financial results for the second quarter ended June 30, 2004. The Company reported total revenue of $28.5 million for the three months ended June 30, 2004, compared to $27.7 million for the three months ended June 30, 2003. In the second quarter of 2004, product revenue was $6.4 million compared to $6.5 million in the second quarter of 2003, and contract research revenue totaled $22.1 million compared to $21.2 million in the second quarter of 2003. With respect to Exubera, defendant Gill stated:

> In the second quarter we continued to see excellent progress and growth in our product pipeline[.]...First, at the annual conference of the American Diabetes Association in June, Pfizer and Aventis presented data from Exubera® (inhaled human insulin powder) clinical trials that increase our confidence in the likelihood of Exubera realizing its potential as a major contributor to diabetes care.

31. Additionally and with respect to the progress of Exubera, the Company, in its press release, stated:

> In June, Nektar reported that Pfizer and Aventis announced results of long-term studies showing sustained glycemic control and pulmonary function in patients with type 2 diabetes taking Exubera. The data were presented at the 64th Annual Scientific Sessions of the American Diabetes conference. They included a pooled analysis of two one-year open-label studies involving 627 patients with type 2 diabetes showing that patients who added Exubera to their treatment regimen experienced no clinically important effect on pulmonary function compared with patients treated with oral agents alone. Glycemic control was maintained in both arms. An additional analysis of 209 patients, 159 of whom were treated with Exubera for up to four years, further supported these findings in type 1 and type 2 patients treated with Exubera.
>
> As reported in March 2004, the European Medicines Evaluation Agency (EMEA) has accepted the filing of a marketing authorization application for Exubera.

32. The statements contained in ¶¶25-31 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that the defendants knew or recklessly disregarded the fact that Aventis, one of its main partners in Exubera, prematurely filed an application for marketing approval of Exubera in the European Union with the European Medicines Agency for the sole purpose of fending off a takeover bid; (2) that the defendants knew or recklessly disregarded the fact that Exubera was plagued by ongoing safety concerns, including decreases in lung function and build-up of antibodies that could potentially affect drug absorption;

CLASS ACTION COMPLAINT                                                                 8



(3) that as a result of these safety concerns, the application for marketing approval of Exubere in the European Union was likely to be rejected; and (4) that despite knowing this facts, defendants approved of the filing because Nektar's revenues and growth prospectuses, which are largely based on royalties and manufacturing payments, are entirely dependent on the success of its partners, who are responsible for clinical development and marketing and because the Company was highly leveraged and needed the European Union filing in order to complete a $199.5 million offering.

### The Truth Begins to Emerge

33. On August 5, 2004, Reuters published an article entitled "EU experts have concerns over Exubera drug-report." The article, in relevant part, read:

> European experts assessing a marketing application from Pfizer Inc. (NYSE:PFE - News) and Aventis (Paris:AVEP.PA - News) for their inhaled insulin drug Exubera have decided it is "not licensable at this time," according to a media report on Thursday.
>
> Online medical news service Agence de Presse Medicale (APM), citing a company source familiar with the review, said officials had raised objections to the product, which offers diabetics an alternative to insulin injections.
>
> The news sent shares of Nektar Therapeutics (NasdaqNM:NKTR - News), a development partner, down more than a third in afternoon trading.
>
> An application for marketing approval of Exubera -- which analysts estimate could have peak annual sales of up to $2 billion if approved -- was filed early this year with the European Medicines Agency, although the companies did not confirm the filing until March.
>
> The first hint of a setback appeared in the minutes of a meeting of Britain's Committee on Safety of Medicines on April 29, which stated that objections had been raised to an unidentified diabetes drug going through the centralized European drug assessment system. The minutes appear on the May 27, 2004 icon of the agency Web site: www.mca.gov.uk/aboutagency/regframework/csm/csmhome.htm.
>
> "The committee endorsed the view of the rapporteurs that this drug was not licensable at this time and raised further major objections," the minutes on the UK agency's Web site state.
>
> Although the committee did not name the product, APM said its source has indicated that the drug was Exubera.
>
> "This is the start of the procedure, when it is normal for objections to be raised. We are confident that we can answer the question," the source stressed.
>
> Neal Sullivan, an analyst at Leerink Swann, said he does not believe the note that Exubera is "not licensable at this time" means this is the European regulators' final ruling.

Approval, he said, is contingent on Pfizer and Aventis adequately answering questions put to them.

Aventis, which is in the process of being acquired by French rival Sanofi-Synthelabo (Paris:SASY.PA - News), said it had no comment.

Vanessa Aristide, a spokeswoman for Pfizer, said "our interaction with the regulatory authorities are following the usual process."

Nektar developed the inhaled insulin and the device to deliver the fine powder to the lungs and licensed it to Aventis and Pfizer.

Safety concerns have dogged Exubera for years, and it is viewed by industry analysts as a high-risk, high-reward project. Although the inhaled powder has appeared effective in clinical trials, tiny decreases in lung function and a build-up of antibodies that could potentially affect drug absorption have been reported.

The safety concerns have necessitated additional clinical trials, and a marketing application for the drug has yet to be filed for the all-important U.S. market.

Aventis said in June, however, that results presented at the American Diabetes Association confirmed the drug's long-term safety and efficacy.

34. News of this shocked the market. Shares of Nektar fell $6.14 per share or 37.01 percent on August 5, 2004, to close at $10.45 per share.

### UNDISCLOSED ADVERSE FACTS

35. The market for Nektar's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Nektar's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Nektar securities relying upon the integrity of the market price of Nektar's securities and market information relating to Nektar, and have been damaged thereby.

36. During the Class Period, defendants materially misled the investing public, thereby inflating the price of Nektar's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

37.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Nektar's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Nektar and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

38.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Nektar, their control over, and/or receipt and/or modification of Nektar allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Nektar, participated in the fraudulent scheme alleged herein.

39.     Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

40. As a result of the fraudulent scheme, defendants were able to complete an offering of 9.5 million that netted the Company more than $199 million in proceeds.

41. Additionally, insiders sold more than 426,800 shares while Nektar stock traded at artificially inflated prices as shown below:

| NAME | DATE | SHARES/PRICE | PROCEEDS |
|---|---|---|---|
| Ajit S. Gill | 03/04/2004<br>03/05/2004 | 50,000 @ $21.865<br>21,800 @ $24.060<br>**Total Shares Sold: 71,800** | $1,093,250<br>$524,508<br>**Total Proceeds: $1,617,758** |
| Robert B. Chess | 03/04/2004<br>03/05/2004<br>03/08/2004 | 100,000 @ $21.950<br>100,000 @ $21.865<br>56,600 @ $22.693<br>**Total Shares Sold: 256,600** | $2,195,000<br>$2,186,500<br>$1,284,423.80<br>**Total Proceeds: $5,665,923.80** |
| Ajay Bansal | 03/04/2004 | 3,000 @ $21.800<br>**Total Shares Sold: 3,000** | $65,400<br>**Total Proceeds: $65,400** |
| J. Milton Harris | 03/04/2004 | 13,150 @ $20.880<br>15,916 @ $21.500<br>14,500 @ $21.800<br>6,434 @ $22.050<br>**Total Shares Sold: 50,000** | $274,572<br>$342,194<br>$316,100<br>$141,869.70<br>**Total Proceeds: 1,074,735.70** |
| | | **Total Shares Sold: 426,800** | **Total Proceeds: $8,423,817.50** |

**Applicability Of Presumption Of Reliance:**
**Fraud-On-The-Market Doctrine**

42. At all relevant times, the market for Nektar securities was an efficient market for the following reasons, among others:

(a) Nektar stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Nektar filed periodic public reports with the SEC and the NASDAQ;

(c) Nektar regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the

CLASS ACTION COMPLAINT                                                                                          12

national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Nektar was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

43. As a result of the foregoing, the market for Nektar securities promptly digested current information regarding Nektar from all publicly-available sources and reflected such information in Nektar stock price. Under these circumstances, all purchasers of Nektar securities during the Class Period suffered similar injury through their purchase of Nektar securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

44. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Nektar who knew that those statements were false when made.

# FIRST CLAIM
## Violation Of Section 10(b) Of The Exchange Act Against And Rule 10b-5 Promulgated Thereunder Against All Defendants

45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46. During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Nektar securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

47. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Nektar securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

48. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Nektar as specified herein.

49. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Nektar value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Nektar and its business operations and future prospects in the light of the

circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Nektar securities during the Class Period.

50. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

51. The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Nektar operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

52. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Nektar securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Nektar

CLASS ACTION COMPLAINT                                                                                                 15

1  publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and
2  misleading statements made by defendants, or upon the integrity of the market in which the
3  securities trades, and/or on the absence of material adverse information that was known to or
4  recklessly disregarded by defendants but not disclosed in public statements by defendants during
5  the Class Period, Plaintiff and the other members of the Class acquired Nektar securities during the
6  Class Period at artificially high prices and were damaged thereby.

7      53.    At the time of said misrepresentations and omissions, Plaintiff and other members
8  of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other
9  members of the Class and the marketplace known the truth regarding the problems that Nektar was
10 experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class
11 would not have purchased or otherwise acquired their Nektar securities, or, if they had acquired such
12 securities during the Class Period, they would not have done so at the artificially inflated prices
13 which they paid.

14     54.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange
15 Act, and Rule 10b-5 promulgated thereunder.

16     55.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the
17 other members of the Class suffered damages in connection with their respective purchases and sales
18 of the Company's securities during the Class Period.

### SECOND CLAIM
### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

21     56.    Plaintiff repeats and realleges each and every allegation contained above as if fully
22 set forth herein.

23     57.    The Individual Defendants acted as controlling persons of Nektar within the meaning
24 of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and
25 their ownership and contractual rights, participation in and/or awareness of the Company's
26 operations and/or intimate knowledge of the false financial statements filed by the Company with
27 the SEC and disseminated to the investing public, the Individual Defendants had the power to
28 influence and control and did influence and control, directly or indirectly, the decision-making of

CLASS ACTION COMPLAINT            16

the Company, including the content and dissemination of the various statements which Plaintiff contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58. In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

59. As set forth above, Nektar and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated:  September 3, 2004

Respectfully submitted,

**GREEN & JIGARJIAN LLP**

By: _/s/ Robert S. Green_
        Robert S. Green

235 Pine Street, 15th Floor
San Francisco, California 94104
Telephone:  (415) 477-6700
Facsimile:  (415) 477-6710

Marc A. Topaz
Richard A. Maniskas
Tamara Skvirky
**SCHIFFRIN & BARROWAY, LLP**
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA  19004
Telephone:  (610) 667-7706

**Attorneys for Plaintiff**

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, (print name) NORMAN K. RHODES ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the Complaint and authorizes its filing.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transaction(s) in the Nektar Therapeutics (Nasdaq: NKTR) security that is the subject of this action during the Class Period is/are as follows[1]:

| No. of Shares | Buy/Sell | Date | Price Per Share |
|---|---|---|---|
| 300 | BUY | 12-5-03 | 13.14 |
| 300 | SELL | 1-14-04 | 18.20 |
| 500 | BUY | 1-21-04 | 18.65 |
| 500 | SELL | 3-5-04 | 23.64 |

CONTINUED

[1] List additional transactions on a separate sheet of paper, if necessary.

5. Plaintiff has complete investment authority and is the agent and attorney-in-fact with full power and authority to bring a suit to recover for investment losses.

6. During the three years prior to the date of this Certification, Plaintiff has sought to serve or served as a representative party or a class in the following actions filed under the federal securities laws (if none, so indicate): NONE

7. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24 day of AUGUST, 2004.

Norman K. Rhodes
Signature

NORMAN K. RHODES
Print Name

Case 3:04-cv-03735-JSW Document 1 Filed 09/03/04 Page 20 of 20

NKTR

| # OF SHARES | BUY/SELL | DATE | PRICE PER SHARE |
|---|---|---|---|
| 1000 | BUY | 3-5-04 | 23.35 |
| 1000 | BUY | 3-31-04 | 21.80 |
| 1000 | SELL | 4-1-04 | 22.06 |
| 1000 | BUY | 4-2-04 | 22.05 |
| 1000 | SELL | 4-5-04 | 22.85 |
| 1000 | BUY | 4-6-04 | 22.20 |
| 1000 | SELL | 5-10-04 | 19.08 |
| 1000 | BUY | 5-10-04 | 18.70 |
| 1000 | SELL | 5-12-04 | 18.21 |
| 1000 | BUY | 5-12-04 | 17.44 |
| 1000 | SELL | 5-13-04 | 17.70 |
| 1000 | BUY | 5-14-04 | 17.45 |
| 1000 | SELL | 5-19-04 | 17.13 |